UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| UNITED STATES OF AMERICA, | 2:09-cr-0248-LDG-RJJ |
|---|---|
| Plaintiff, | |
| v. | **ORDER** |
| KEVIN RAY SCHULTZ, | |
| Defendant. | |

Title 28 U.S.C. § 636 dictates that the district court is required to make a de novo determination to resolve objections to a magistrate judge's report and recommendation. Here, at defendant Schultz' request, the court conducted an evidentiary hearing on September 9, 2010, to review the magistrate judge's credibility determinations supporting his report recommending the denial of Schultz' motion to suppress. Detectives Joseph Giannone and David Denton, and Officers John Quintana and Robert Grantham testified for the government; and Charlene Jennings testified on behalf of Schultz. Unless otherwise addressed, the court adopts the magistrate judge's recitation of the background facts.

Schultz asserts that Detective Giannone's inconsistent testimony regarding the undercover surveillance and traffic stop of Schultz is reason to reject the magistrate judge's credibility determination. The court agrees that discrepancies exist between Detective Giannone's testimony

before the magistrate judge and the record.  Most notably, Detective Giannone initially gave conflicting testimony before the magistrate judge regarding whether it was he or Sergeant Siwy who first reacquired visual contact of Schultz' car after the officers lost sight of him.  The relocation of Schultz' car is important because it apparently occurred only moments before Detective Giannone also observed Schultz run the stop light at Ford Avenue and Las Vegas Boulevard–the traffic infraction for which Schultz was ultimately stopped by police.  On direct examination before the magistrate judge Detective Giannone testified that he "believe[d]" it was Sergeant Siwy who rediscovered Schultz, which Detective Giannone reaffirmed under cross examination with respect to the interpretation of the CAD report.  After a break in which Detective Giannone discussed his memory of events with the prosecutor, Detective Giannone corrected his testimony and stated that after having his recollection refreshed during the break, it was he, not Sergeant Siwy, who initially saw Schultz after they had lost him.

      The court finds, however, Detective Giannone's explanation for the apparent conflict in his testimony to be believable.  During cross examination before the magistrate judge, Detective Giannone was responding to questions related to the CAD report's reflection that Sergeant Siwy re-spotted Schultz, and could have understandably been confused about whether it was the questions regarding the CAD report or his own spotting of Schultz.  The CAD report, which is essentially a log of communications with dispatch, did not reflect Detective Giannone's corroborated testimony that he was using his cell phone in contact with the other detectives, rather than dispatch, at the time of Schultz' relocation.  And his lack of firmness in his direct testimony before the magistrate judge about who first spotted Schultz is not extraordinary given that the events had occurred almost a year previously, and the CAD report's reference only to Sergeant Siwy's communications with dispatch during the relevant time period.

      Moreover, as the magistrate judge noted during the suppression hearing, while it seems irregular that Detective Giannone's original report lacked many of the details which were

2

subsequently added by his supplemental report just days before the suppression hearing, the court finds credible Detective Giannone's undisputed testimony before this court that the original report was directed to the probable cause for the eventual stop, rather than the other aspects of the surveillance and investigation.  In addition, Detective Giannone's explanation regarding not revealing his undercover vehicle, as opposed to his own identity, is supported by his actions during the surveillance and stop, and by other witnesses' testimony.

      Schultz introduced Charlene Jennings, Schultz' passenger when his car was stopped, to testify that Schultz did not run the stop light at Ford Avenue and Las Vegas Boulevard.  The court notes that Jennings has been convicted related to forgery and, given her previous relationship with Schultz, her denial that Schultz ran the stop light, and her rationale regarding the traffic volume and possible police presence on Las Vegas Boulevard does not adequately undermine Detective Giannone's testimony and report to other officers that he observed Schultz run the light.  Nor was there any impropriety in the decision of the police to impound the car, which was illegally parked at the stop, and neither of whose occupants carried a valid driver's license.  Finally, the court finds reasonable and warranted the police restraint in not attempting to enter the store to approach Schultz, and the twenty-minute delay after the infraction to make the stop once Schultz was back on the road was not unreasonable.

      Schultz also argues that the government failed to meet its burden to show that Schultz waived his Miranda rights and voluntarily spoke with detectives, admitting that there was a gun in his car, and describing it and its exact location.  The parties agreed to the court's review of Schultz' testimony on this subject before the magistrate judge in lieu of his testimony at the de novo hearing, and the court notes that Schultz consistently denied receiving and waiving his Miranda rights and admitting to the gun in the car.  The court is troubled by the detectives' choice to verbally inform Schultz of his Miranda rights, and proceed without a signed waiver or tape recording, in a case in which the police had, up to that point, invested such interest, time and

1  resources.  The court also has some difficulty with the detectives' decision not to seek a written
2  consent from Schultz to recover the gun from the car when, according to the detectives' testimony,
3  the interview was cooperative and Schultz had readily waived his <u>Miranda</u> rights, confessed to
4  having the gun in his car, and described its exact location.  Instead, the detectives chose to
5  terminate the interview, prepare an affidavit, and seek a telephonic warrant from a judge to search
6  the car.  However, the court also recognizes that police department policy does not require
7  recorded or written waivers of Miranda rights, and that the acquisition of a search warrant, as
8  opposed to seeking written consent from Schultz to search the car, was a legitimate option for the
9  detectives to pursue in locating the gun.

10  Moreover, the court finds the testimony of Detective Giannone and Detective Denton
11  regarding the circumstances relating to the interview of Schultz, his Miranda waiver and
12  subsequent confession regarding the gun, to be consistent.  Tellingly, the affidavit in support of the
13  search warrant prepared by Detective Denton after the jail interview with Schultz contains details
14  about the type of gun and its specific location in the car.  The clear implication is that the
15  additional information was acquired during the interview with Schultz.  Based on the detectives'
16  acquisition of the specific information related to the gun and its location, the consistency of the
17  detectives' testimony regarding the circumstances related to the interview, and the demeanor of
18  both, the court finds that the testimony of Detective Giannone and Detective Denton related to the
19  jail interview is credible.[1]
20  / / /
21  / / /

---

[1] Needless to say, because the court's credibility determination involving Detective Giannone and Detective Denton relies heavily on the implication that neither detective nor any other person at either detective's direction gained access to Schultz' car between the time that the car was towed and the judicial approval of the request for the issuance of the search warrant, it would be incumbent on the government and the detectives to inform the court if any such access to the car, in fact, occurred.

Accordingly, after a de novo review, and except as otherwise indicated in this order, THE COURT HEREBY ADOPTS the magistrate judge's report and recommendation (#38), and ORDERS that defendant Schultz' motion to suppress (#18) is DENIED.

Dated this 13 day of September, 2010.

_____
Lloyd D. George
United States District Judge